UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK J. BROOKS,<br>Plaintiff,<br>v.<br>TOWN OF WORTHINGTON, et al.,<br>Defendants. | Civil Action No. 25-30031-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MOTION TO QUASH, AND PLAINTIFF'S MOTIONS FOR SANCTIONS AND FOR LEAVE TO AMEND
(Dkt. Nos. 26, 32, 36, 37)

September 30, 2026

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Plaintiff, Mark J. Brooks, alleges a years-long dispute between himself and various snowmobile enthusiasts regarding winter maintenance of a portion of Lindsey Hill Road in Worthington, Massachusetts. This action, the third Plaintiff has filed since 2024 arising from that dispute, concerns both the Town of Worthington's ("Worthington") appointment of Defendant Devon R. Wolf as Highway Superintendent and alleged acts of retaliation against Plaintiff for his efforts to keep Lindsey Hill Road open during the winter. Proceeding *pro se*, Plaintiff brings claims against Worthington; members of the Worthington Select Board ("Select Board") Charles Rose, Amy Wang, and Stephen Smith; and Highway Superintendent Wolf. Plaintiff contends that Worthington and the Select Board members violated Massachusetts law by appointing Wolf as Highway Superintendent (Count I). Plaintiff further asserts that Rose, Wang, Smith, and Wolf

("Defendants") violated his First Amendment right to petition the government (Count II), the Massachusetts Civil Rights Act (Count III), and the Equal Protection Clause of the Fourteenth Amendment (Count IV).

Defendants now move to dismiss Plaintiff's amended complaint. For the reasons that follow, the court will grant Defendants' motion to dismiss (Dkt. No. 26) as to Plaintiff's federal claims (Counts II and IV). After dismissing the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims (Counts I and III) and remand them to state court. [1]

## II. BACKGROUND

Plaintiff has lived at a residence on Lindsey Hill Road since 1997. [2] At some point, the Select Board voted to close a portion of Lindsey Hill Road during the winter. Worthington did not plow the closed section, allowing local snowmobilers to use it as a trail. The seasonal closure inconvenienced Plaintiff, who repeatedly objected to the practice. In 2016, after Plaintiff raised the issue with the Hampshire Council of Governments, Worthington was directed to keep Lindsey Hill Road open to traffic during the winter. That change prevented the Worthington Snowmobile Club from continuing to use a trail through the previously closed section of Lindsey Hill Road. Wolf was allegedly associated with the Worthington Snowmobile Club and was also employed by the

[1] Plaintiff commenced this action in state court. Invoking this court's federal-question jurisdiction, Defendants removed the action and moved to dismiss. Plaintiff thereafter filed an amended complaint and Defendants responded with a second motion to dismiss. Wolf did not join either motion to dismiss and instead filed an answer to the amended complaint. (Dkt. No. 27.)

[2] Consistent with the applicable plausibility standard, the court recounts Plaintiff's factual allegations concerning who did what and when, but generally omits conclusory allegations concerning the legal significance of those actions. *A.G. by & through Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) ("[T]he Court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" (quoting *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012))). The court does not recount in detail events occurring many years before Plaintiff commenced this action because, as explained below, any claims arising from those events are barred by the applicable three-year statute of limitations.

Worthington Highway Department. According to Plaintiff, Wolf and others were unhappy that the snowmobile trail was no longer available and thereafter began a campaign of intimidation and harassment against him.

Plaintiff alleges, among other things, that a portion of Lindsey Hill Road was graded in a manner that directed water onto his driveway, causing it to become icy during the winter. Plaintiff attempted to address the problem by constructing a drain, but his efforts did not resolve the dispute and, he alleges, may have further increased the animosity toward him. The Amended Complaint describes two hostile encounters Plaintiff had in 2023 with an individual who is neither a defendant in this action nor alleged to be a Worthington employee. Plaintiff alleges that this individual is a friend of Wolf and attributes the individual's hostility to the dispute over the winter maintenance of Lindsey Hill Road. Plaintiff further alleges that, in March 2023, he observed Wolf and the individual standing in a nearby driveway and jeering at him after his plow truck broke down before he could finish clearing his driveway following a snowstorm. On September 24 and November 12, 2024, Plaintiff sent letters to the Select Board describing what he believed to be continuing harassment and retaliation stemming from his successful efforts to end the seasonal closure of Lindsey Hill Road.

During the fall of 2024, Wolf applied to become Worthington's Highway Superintendent. The Select Board interviewed Wolf and, on December 5, 2024, voted to appoint him to the position. On December 9, 2024, Plaintiff wrote to the Select Board requesting Wolf's termination based on conduct Plaintiff believed violated Worthington's rules governing public officials. The Select Board took no action in response.

Plaintiff alleges that on December 21, 2024, Wolf damaged his lawn by "plow[ing] a new lane of Lindsey Hill Road across Plaintiff's lawn." (Am. Compl., Dkt. No. 22, ¶ 35.) Per Plaintiff, Wolf did not similarly damage the lawns of other residents. Later that day, Plaintiff discovered fresh

boot prints on his property near a "No Trespassing" sign and became concerned that individuals were hunting on his land. While driving near another property he owned, Plaintiff encountered an old truck temporarily blocking the road. After Plaintiff maneuvered around the truck, it quickly left the area. Upon returning home, Plaintiff observed fresh tire tracks near his residence and later learned that a red truck owned by Worthington had been in the area approximately one hour earlier.[3]

Plaintiff commenced this action in state court on February 5, 2025. Several days later, on February 10, 2025, Plaintiff observed a Worthington Highway Department employee driving a dump truck on Lindsey Hill Road. As Plaintiff walked up his driveway after speaking with the driver of a propane delivery truck, he allegedly heard the Worthington employee tell the delivery driver "You know he's the asshole who got the road open." (*Id.* ¶ 47.) Plaintiff subsequently reported the incident to the Select Board.

In or around May 2025, Plaintiff learned that Wolf had been the only candidate interviewed for the Highway Superintendent position and filed a complaint with the Massachusetts Attorney General's Office. On May 17, 2025, Wolf allegedly graded Lindsey Hill Road in a manner that directed additional water toward Plaintiff's driveway. Plaintiff alleges that the resulting runoff washed out his driveway on May 30, 2025. A few days later, Plaintiff submitted a property-damage claim to Defendants concerning the grading.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "A

[3] Plaintiff also alleges that he believes Wolf was driving the red truck and "was lying in wait so as to descend down Lindsey Hill to confront, assault [sic] the Plaintiff with a Snow Plow." (Am. Compl., Dkt. No. 22, ¶ 44.) Plaintiff, however, identifies no factual basis for his belief that Wolf was driving the truck or intended to confront or assault him. The court therefore need not credit these conclusory allegations.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). Dismissal is appropriate for any claim if the factual allegations cannot support one or more "material element[s] necessary to sustain recovery under some actionable legal theory." *N.R. by & through S.R. v. Raytheon Co.,* 24 F.4th 740, 746 (1st Cir. 2022) (internal quotations omitted). This includes any claim that is untimely on its face. *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (affirming dismissal "when the pleader's allegations 'leave no doubt that an asserted claim is time-barred,'" as occurred when plaintiff alleged harms caused by discrete actions taken years before the limitations period (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)).[4]

## IV. SPECIAL CONSIDERATIONS APPLICABLE TO COMPLAINTS FILED BY *PRO SE* PLAINTIFFS

"Our judicial system zealously guards the attempts of *pro se* litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Recognizing the difficulties *pro se* plaintiffs face, the courts construe *pro se* complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, *pro se* status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, "even a *pro se* plaintiff is required 'to

---

[4] When resolving a Rule 12(b)(6) motion to dismiss, the court generally may consider only "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken." *Nollet v. Justs. of Trial Ct. of Com. of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass.), *aff'd sub nom. Nollet v. Justs. of Trial Ct. of Com. of Massachusetts*, 248 F.3d 1127 (1st Cir. 2000); *see Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990)) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Holding all plaintiffs, including *pro se* plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotations omitted).

## V. Discussion

Plaintiff alleges that he has been subjected to harassment and retaliation arising from his efforts to keep Lindsey Hill Road open to year-round traffic. He seeks to hold Worthington, members of its Select Board, and its Highway Superintendent liable for that conduct. Although the amended complaint is not a model of clarity, the court understands Plaintiff to assert two federal constitutional claims under 42 U.S.C. § 1983 ("Section 1983") and two claims arising under Massachusetts law. Because Plaintiff's federal claims supply the basis for this court's subject matter jurisdiction, the court begins there.

### A. Section 1983

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Borras-Borrero v. Corporacion del Fondo del Seguro del Estado*, 958 F.3d 26, 35 (1st Cir. 2020) (internal quotations omitted). "A claim for relief under section 1983 requires a showing of two elements—first, that the plaintiff was deprived of either a federal constitutional or statutory right, and, second, that the deprivation was carried out by a defendant acting under color of state law." *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012). Plaintiff invokes two federally constitutional protected rights: the Fourteenth Amendment right to equal protection and the First Amendment right to petition the government. Because Defendants do not

dispute that the challenged conduct constitutes state action, the court focuses on whether the amended complaint plausibly alleges a deprivation of either constitutional right.

Section 1983 claims borrow the forum state's limitations period for personal injury actions. *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Under Massachusetts law, "actions . . . to recover for personal injuries . . . shall be commenced only within three years next after the cause of action accrues." Mass. Gen. Laws ch. 260, § 2A. "[T]he accrual date for a § 1983 action is simply the date when the potential plaintiff knew or should have known that she was harmed." *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008). Accordingly, to the extent Plaintiff seeks relief for discrete injuries of which he knew more than three years before commencing this action, those claims are time-barred.

**i. Equal Protection**

Plaintiff first contends that Defendants subjected him to selective road maintenance because of his dispute with Worthington and local snowmobile enthusiasts. (Am. Compl., Dkt. No. 22 ¶ 75.) More specifically, he alleges that Wolf raised the portion of Lindsey Hill Road adjacent to his property in a manner that directed water onto his driveway, where it froze during winter, and later plowed across his lawn. Plaintiff contends that other residents of Lindsey Hill Road were not subjected to similar treatment. (*Id.* ¶¶ 85-86.)

"Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9 (1st Cir. 2007). A plaintiff may state an equal-protection claim by alleging either that he (1) was selectively treated because of his membership in a particular class or group, or (2) that, as a "class of one," he was intentionally treated differently from similarly situated persons without a rational basis for the distinction. *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023). Plaintiff does not allege membership in a protected class. His claim therefore proceeds, if at all, under a "class of one"

theory. Such a claim "require[s] 'an extremely high degree of similarity between the plaintiffs and the persons to whom they compare themselves.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (quoting *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007)). Particularly "[i]n the land-use context, this means more than pointing to nearby parcels in a vacuum and leaving it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated." *Id.* (internal quotation marks and citation omitted). That is essentially what Plaintiff has done here. The amended complaint alleges that "Mr. Wolf selected the Plaintiff out of other similarly situated residents at #15,22,72,89, [sic] and 92 Lindsey Hill Road as he did not raise the road approximately 12" [sic] at their property causing lawn and driveway damage or plowing a lane of road over their lawn." (Am. Compl., Dkt. No. 22 ¶ 86.) But Plaintiff alleges no facts concerning those properties, their physical characteristics, their drainage conditions, the road elevations adjoining them, the maintenance performed there, or any other circumstances from which the court could reasonably infer that these residents "were 'similarly situated [to Plaintiff] in all relevant respects.'"[5] *Freeman*, 714 F.3d at 39 (quoting *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001)). Merely identifying neighboring properties that allegedly received different treatment does not satisfy the demanding comparator requirement governing a class of one claim. Plaintiff therefore has not plausibly alleged an equal protection violation and Count IV is dismissed.

---

[5] Although Plaintiff purports to assert his equal protection claim against Rose, Wang, Smith, and Wolf, the allegations underlying that claim concern only Wolf's conduct. The amended complaint does not identify any conduct by Rose, Wang, and Smith that allegedly violated Plaintiff's right to equal protection. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why.").

**ii. First Amendment Retaliation**

Plaintiff next alleges that Defendants retaliated against him for exercising his First Amendment right to petition the government concerning the winter maintenance of Lindsey Hill Road. To state a First Amendment retaliation claim, Plaintiff must plausibly allege that "(1) [he] engaged in constitutionally protected conduct, (2) [he was] subjected to an adverse action by [Defendants], and (3) the protected conduct was a substantial or motivating factor in the adverse action." *Falmouth Sch. Dep't v. Doe on behalf of Doe*, 44 F.4th 23, 47 (1st Cir. 2022) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)).

The amended complaint identifies two principal acts of alleged retaliation: Wolf's treatment of the portion of the Lindsey Hill Road adjoining Plaintiff's property and an alleged assault on Plaintiff in October 2023. The alleged assault cannot support a Section 1983 retaliation claim against Defendants. The individual who allegedly assaulted Plaintiff is neither a Worthington employee nor a defendant in this action. The amended complaint's only alleged connection between that individual and any Defendant is that he and Wolf are acquaintances. That relationship, without more, does not plausibly support an inference that Wolf or any other Defendant directed, participated in, or was otherwise responsible for the assault.

The allegations concerning road maintenance likewise fail to state a plausible retaliation claim. Although Plaintiff alleges that Wolf altered the road in a manner that damaged his property, the amended complaint must plausibly connect that adverse action to Plaintiff's protected petitioning activity. Plaintiff points to an incident where Wolf's subordinate, Rheal Labrie, told Wolf "you know he's the asshole who got the road open." (Am. Compl., Dkt. No. 22 ¶ 66.) But that statement, standing alone, does not plausibly establish that Wolf altered the road in retaliation for Plaintiff's protected activity. More fundamentally, Plaintiff's own allegations undermine his theory that Wolf undertook the challenged road maintenance in retaliation for Plaintiff's protected activity.

In a September 24, 2024 letter addressed to the Select Board, Plaintiff attributed the grading of Lindsey Hill Road near his property to Nugent, stating that "Nugent retaliated further by grading up Lindsey Hill Road a foot in the area of Brook's propertry [sic] negating the 12" high water dam Brooks had created to minimize driveway damage by directing the water down the side of Lindsey Hill Road." (Dkt. No. 22-1 at 5.) Nugent, however, is not a defendant in this action. Elsewhere in the same letter, Plaintiff stated that "[i]n 2016, Nugent and Wolf" became "enraged" after Plaintiff successfully petitioned to have the relevant portion of Lindsey Hill Road plowed. (*Id.* at 1, 3.) Per Plaintiff, "Wolf [thereafter] began . . . widening Lindsay [sic] Hill Road at Brooks frontal property," damaging the grass and pitching the road so that water flowed toward Plaintiff's driveway. (*Id.* at 3.) Plaintiff also maintained that "Selectmen Smith view and confirm [sic] problem that was deliberately ignored by Nugent in 2023 and 2024 created by Wolf as late as 2019." In any event, Plaintiff fails to state a viable retaliation claim against Wolf.

To the extent Plaintiff alleges that Wolf personally altered the road in retaliation for his 2016 petition, the alleged conduct occurred well outside the applicable three-year limitations period. To the extent Plaintiff instead relies on more recent grading, his own statements attribute that conduct to Nugent, who is not a defendant in this action. These allegations, even liberally construed, do not plausibly establish that Wolf took an actionable adverse action against Plaintiff because of his protected petitioning activity within the limitations period. Accordingly, Plaintiff's First Amendment retaliation claim is dismissed.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 24) is GRANTED as to Plaintiff's federal claims in Counts II and IV. With the federal claims dismissed, the court declines to

exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in Counts I and III.[6] Those claims are therefore REMANDED to state court.[7] Defendants' motion to quash (Dkt. No. 32) and Plaintiff's motions for sanctions and for leave to file a second amended complaint (Dkt. Nos. 36, 37) are DENIED as MOOT. The clerk of court is directed to remand the state law claims to state court and close this case.

It is so Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

[6] "[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)); *see Meuse v. Pane*, 322 F. Supp. 2d 36, 39 (D. Mass. 2004) ("Having dismissed [the plaintiff's] federal claims against [the defendant], this Court declines to exercise supplemental jurisdiction over [the plaintiff's] state law claims against [the defendant]."); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

[7] Defendants also move to quash a subpoena served on AT&T seeking Wolf's telephone records. Because the court will dismiss Plaintiff's federal claims and remand the state law claims, it need not address the motion to quash and denies it as moot. Plaintiff likewise moves for sanctions against Defendants' counsel and for leave to further amend the complaint to assert an additional state-law claim. For the same reasons, those motions will also be denied as moot but may be refiled after the case is remanded to state court.